**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |
|---|---|
| WILLIAM RANGE, | |
| Petitioner, | Civ. Action No. 15-2773 (RMB) |
| v. | OPINION |
|  | (PUBLIC) |
| PATRICK NOGAN, ADMINISTRATOR | |
| Respondent. | |

**BUMB, United States District Judge**

This matter comes before the Court upon the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 filed by Petitioner William Range ("Petitioner"), an inmate confined in East Jersey State Prison. (Pet., ECF No. 1.) Petitioner pled guilty in the New Jersey Superior Court, Atlantic County, for aggravated manslaughter. (Id.) Petitioner appealed his sentence, and the Appellate Division remanded for resentencing on December 19, 2006. (Id. at 2.) The New Jersey Supreme Court denied certification and directed the trial court to amend its judgment to reflect that it considered and found mitigating factor four. (Id.)

Petitioner subsequently filed a petition for post-conviction relief, which was denied on February 24, 2012. (Pet., ECF No. 1 at 3, ¶11). The Appellate Division affirmed and the Supreme Court

1

denied certification. State v. Range, 2014 WL 2882449 (N.J. Super. Ct. App. Div. June 26, 2014) certif. denied, 220 N.J. 100 (N.J. Dec. 5, 2014). Petitioner filed his habeas petition in this Court on April 9, 2015. Respondent filed an Answer on August 3, 2015. (ECF No. 8.) Petitioner filed a Reply. (ECF No. 12.) This matter is now before the Court for resolution of the habeas petition.

I.  BACKGROUND

Petitioner stabbed his friend to death because he told Petitioner's family that Petitioner was selling drugs. (Answer, Ex. 1, Transcript of Entry of Plea, 1T:8-8 to 13.) The factual background was further summarized by the New Jersey Superior Court Appellate Division on Petitioner's appeal of the order denying post-conviction relief. Range, 2014 WL 2882449. On March 9, 2005, Petitioner pled guilty to first degree aggravated manslaughter in exchange for the State's agreement to amend the original charge of murder and dismiss related charges for unlawful possession of a weapon. The plea agreement called for a sentence of twenty-five years, with an eighty-five percent period of parole ineligibility, and five years of parole supervision. On November 21, 2008, upon resentencing under State v. Natale, 184 N.J. 458 (2005), the trial court imposed the same term of imprisonment. The New Jersey Supreme Court denied certification but directed the trial court to amend the judgment of conviction to reflect that it found mitigating factor number four in imposing sentence.

2

Petitioner filed a petition for post-conviction relief on June 28, 2011. In a brief filed by counsel, Petitioner asserted defense counsel was constitutionally ineffective by (1) not providing the sentencing court with medical records of defendant's psychiatric history, which should have been considered a mitigating factor in determining his sentence, and (2) failing to argue against the findings of certain aggravating factors. The PCR Court denied the claims without an evidentiary hearing.

The PCR judge, who was also the sentencing judge, explained that he questioned Petitioner at the March 9, 2005 plea hearing and was satisfied by Petitioner's lucid responses. Petitioner presented himself as being of sound mind, and he did not have any difficulty understanding the charges against him. Petitioner understood his constitutional rights and waived those rights after consulting with defense counsel. Defense counsel raised the issue of Petitioner's history of mental illness, and argued that it should be considered as a mitigating factor upon sentencing. Petitioner was remorseful and acknowledged he should be held accountable for his actions. The PCR Court denied Petitioner's ineffective assistance of counsel claims, and the Appellate Division affirmed, substantially for the reasons expressed by the PCR Court in his oral opinion delivered from the bench on February 24, 2012.

II. DISCUSSION

    A.    Standard of Review

28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from U.S. Supreme Court precedent and arrived at a different result than the Supreme Court. Eley v. Erickson, 712 F.3d 837, 846 (3d Cir. 2013) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). The phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta" of the U.S. Supreme Court's decisions. Williams, 529 U.S. at 412. An "unreasonable application" of clearly established federal law is an "objectively unreasonable"

4

application of law, not merely an erroneous application. Eley, 712 F.3d at 846 (quoting Renico v. Lett, 130 S.Ct. 1855, 1862 (2010)).

    B.   Analysis

Petitioner raises one ground for habeas relief; trial counsel was ineffective for failing to present evidence of his severe mental illness at sentencing. (Pet., ECF No. 1 at 27.) Petitioner acknowledged that trial counsel told the court Petitioner suffered from mania, depression, and hearing voices, and that his use of mind altering medications for years "surely took part in what happened that day." (Id.) Trial counsel referred to information in the PSR, which Petitioner contends pales in comparison to evidence in his medical records that were provided in his petition for post-conviction relief.[1] (Id.)

Petitioner notes that the sentencing court found his mental illness to be only a "marginal" mitigating factor, and but for counsel's failure to offer his medical records at sentencing, the court would have imposed a lower term of imprisonment. (Id. at 27-28.) Petitioner explains that his PSR stated he was diagnosed with paranoid schizophrenia, bipolar disorder, and claustrophobia, but his medical records show he underwent hospitalizations since age 19, and his symptoms included inappropriate behaviors, paranoia, mood swings, hearing voices, and suicide attempts. (Id. at 28.)

---

[1] Respondent provided the medical records under seal, as Exhibit 10 to the Answer. (Sealed Medical Records, ECF No. 9.)

Petitioner contends the PCR Court admitted he did not have the expertise to know what impact Petitioner's mental illness had on his commission of the crime, and that because he could not answer that question, he applied mitigating factor number four only "marginally." (Id.) Furthermore, his counsel failed to provide the sentencing court with the information it needed to understand the impact of Petitioner's mental illness on his commission of the crime. (Id.) Petitioner also faults counsel for not requesting an evidentiary hearing, and requests an evidentiary hearing in this habeas proceeding. (Id. at 29.)

In its answer to the petition, Respondent notes Petitioner faced potential exposure to sentencing for first-degree murder as a persistent offender with eighteen prior convictions, for thirty-five years to life. (Answer, Ex. 2, Transcript of Sentence, 2T:11-4 to 7.) Even on the reduced charge of aggravated manslaughter, as a persistent offender, Petitioner faced a sentence between thirty years and life. (Answer, ECF No. 8 at 9, citing N.J.S.A. 2C:44-7a(1)).

In opposition to the ineffective assistance of counsel claim, Respondent quotes the following colloquy between Petitioner and counsel at the plea hearing:

> [COUNSEL]: I have 95 percent of the discovery. I met with him three times today, as well as in the jail, Atlantic County jail.

6

> Judge, I have informed him that if we were to go to trial, which we're not, I would probably file a Miranda hearing, maybe a suppression hearing and by – by not only giving up his right to trial and other constitutional rights, he's giving up the right to my pretrial motions, pretrial - - other pretrial discovery, things like that.
>
> Judge, he - - to be candid with the Court, he wants to take responsibility for the - - of his actions. He wants to get this over, not only for himself and his family, but for the victim, victim's family, Your Honor, and of course, I would hope the Court would take that into account on the date of sentencing.
>
> Your Honor, with that - - Mr. Range, have I gone over everything with you?
>
> [PETITIONER]: Yes.
>
> [COUNSEL]: And it - - was it you, even though I may not have advised you to plead guilty, is it you that wants to take this deal?
>
> [PETITIONER] Yes.

(Answer, Ex. 1, Transcript of Entry of Plea, 1T:4-18 to 5-17.)

Specifically addressing Petitioner's claim that counsel was deficient for not providing the sentencing court with his mental health records, Respondent asserts nothing in those records appreciably differs from what Petitioner and his trial counsel represented to the Court at sentencing. (Answer, ECF No. 8 at 11.) Trial counsel told the sentencing court "something happened in 1994" and Petitioner's "mental health got worse . . . he started suffering anger issues, depression issues, manic issues and hearing voices." (Answer, Ex. 2 Transcript of Sentencing, 2T:4-17

7

to 20.) Petitioner himself told the sentencing judge: "I would like to say I know my actions can't bring back Kevin Brown. He was a friend. You know what I mean? I do go through manic depression. I'm paranoid schizophrenic. I wasn't on my medication and I was under the influence . . . of cocaine." (Id. at 2T:9-25 to 10-7.)

In his reply to Respondent's Answer, Petitioner asserts Respondent should have provided a copy of his PSR to this Court. Petitioner contends the PSR is necessary to demonstrate that the sentencing court lacked sufficient medical evidence for his sentencing decision. (Petitioner's Response to Respondent's Answer, ECF No. 12 at 4.) Petitioner argued,

> [t]he PSR stated that Mr. Range said that he had been diagnosed with paranoid schizophrenia and bipolar disorder, and that he suffers from claustrophobia. PSR. By contrast, the medical records provided twenty-five pages worth of documentation of Mr. Range's severe paranoid schizophrenia, revealing hospitalizations since the age of 19, and inappropriate behaviors and symptoms, including paranoia, mood swings, and hearing voices, and suicide attempts.

(Id. at 16.)

1. Evidentiary Hearing

When deciding whether to grant an evidentiary hearing in a § 2254 proceeding, a federal court must take into account the deferential standards prescribed by § 2254. Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Thus, if the record refutes a petitioner's factual allegations or otherwise precludes habeas

8

relief, a district court need not hold an evidentiary hearing. Id. As discussed below, the record precludes habeas relief. Therefore, the Court will deny Petitioner's request for an evidentiary hearing. Additionally, the Court finds the PSR is not necessary for determination of the issues presented here because the relevant information is contained in the sentencing transcript.

2. Ineffective Assistance of Counsel

An ineffective assistance of counsel claim has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).

Furthermore, the first prong of the test "requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012) (quoting Hill v. Lockhart, 474 U.S. 52, 57 (1985) (quoting Strickland, 466 U.S. at 688)). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the

challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (citing Bell v. Cone, 535 U.S. 685, 702 (2002); Kimmelman v. Morrison, 477 U.S. 365, 382 (1986); Strickland, 466 U.S. at 689; United States v. Cronic, 466 U.S. 648, 656 (1984)).

The second prong of the Strickland test, prejudice, requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is one 'sufficient to undermine confidence in the outcome.'" Collins v. Sec. of Pennsylvania Dept. of Corr., 742 F.3d 528, 547 (3d Cir. 2014) (quoting Strickland, 466 U.S. at 694).

The "ultimate focus" of the prejudice inquiry is on the fundamental fairness of the proceeding. Id. at 696. "Prejudice is viewed in light of the totality of the evidence at trial and the testimony at the collateral review hearing." Collins, 742 F.3d at 547 (citing Rolan v. Vaugh, 445 F.3d 671, 682 (3d. Cir. 2006)). A court need not address both components of the ineffective assistance inquiry. Strickland, 466 U.S. at 697. "If it is easier

10

to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Id.

Upon habeas review, deference is given to the last reasoned State Court judgment on Petitioner's claim. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). The Appellate Division affirmed the PCR Court's denial of Petitioner's ineffective assistance of counsel claim substantially for the reasons expressed by the PCR Court in his oral opinion delivered from the bench on February 24, 2012. Therefore, this Court looks to the PCR Court's oral opinion.

Judge Michael A. Donio, who was also the sentencing judge, denied Petitioner's PCR claim of ineffective assistance of counsel. Judge Donio said it should not be overlooked that, at sentencing, he said he believed the parties had taken Petitioner's mental illness into account when they negotiated the plea down from murder to aggravated manslaughter. (Answer, Ex. 8, Transcript of Mot. for PCR, T:13-22-25.) Therefore, he would find Petitioner's mental illness as only a marginal mitigating factor. (Id.) In his PCR opinion, he further explained:

> However, the aggravating factors substantially clearly outweigh the mitigating factors. Did the man have some mental things going on before this. Yeah, he did. Was he also under the influence, or was he by his own admission doing cocaine on that day? Yes, he did. Now, you know, how much of that is from cocaine, how much is from schizophrenia, I don't know, but what I do know is that the parties negotiated this and the defendant was looking at up to 75 years in New Jersey State

11

> Prison on a murder charge, and that the case was pled early on . . . you'll see from looking at the colloquy that this defendant, okay, mental illness or not, all right, I would not let somebody enter into a plea to 25 years state prison if I was concerned in any way, shape or form as to their mental capability of doing it.
>
> . . . yes, somebody may have a report somewhere that says the he may have schizophrenia or other mental issues and, of course, throwing cocaine on top of it, you know, make somebody deranged for the moment or whatever, but be no mistake about it, this individual, when he entered into the plea and at all times before this court, has given appropriate answers to appropriate questions, and has done so quickly, cogently, coherently, and I'm not saying he didn't have a mental issue going on, I'm saying that the prosecutor took that into account in dropping this from a murder to an agg man.
>
> . . .

(Answer, Ex. 8, Transcript of Mot. for PCR, T:13-22 to 17-5, ECF No. 8-8.) The PCR Court added:

> Let me state unequivocally for this record that based on my review of how this incident happened and the savage stabbing of the victim, there is no way, no shape, or no form that I would have undercut this plea agreement. I want to make crystal clear to whoever looks at this in the future. There was no way he was going to walk out of my court with less than the negotiated bargained deal of 25 years at 85 percent, that I could tell you. So when you talk about a Strickland standard where a defendant has the burden to show counsel made such serious errors that counsel wasn't functioning as counsel guaranteed by the Sixth Amendment, and that the defendant suffered prejudice due to counsel's deficient performance, I don't think

12

> this defendant comes close to satisfying either prong of the Strickland prongs.

(Id. at 8T:17-16 to 18-6.)

> So you know, while maybe [counsel] didn't sit there and give me 58 pages of medical records, and then I heard the man talk and I saw that he was totally fine when he spoke with me . . . [citing transcript] Defendant: I would like to say I know my actions can't bring back Kevin Brown, he was my friend, you know what I mean? I do go through manic depression, I'm paranoid schizophrenic, I wasn't on my meds, I was under the influence. The Court: Of what? Cocaine you know. I can't bring him back now. I have to be accountable for my actions. That's why I'm confessing to let the court know what I did. He was manning up, he knew what he did. He got away with a murder charge and pled to agg man. That's what he did. So you know . . . [to] make these arguments, quite frankly, that his counsel didn't do what he was supposed to do and he's entitled to post-conviction relief is, you know, under the totality of facts in this case, it's, you know, in my view not a close call here. He got a bargain of a benefit big time. His mental history was put on the record, his cocaine use was put on the record, okay? The derangement that he showed that day was put on the record, and he got less than the maximum for an agg man. Maybe he would have gotten less somewhere, I don't know, but I could tell you what, it would not have been in this court, not in this room, that I could tell you. . . .

(Id. at 8T:22-11 to 23-12.)

The record does not support Petitioner's contention that the reason the sentencing court found mental illness was only a marginal mitigating factor was the court's lack of knowledge of how Petitioner's mental illness contributed to his commission of

13

the crime. While the court admitted he did not know how much blame to attribute to Petitioner's schizophrenia as opposed to his cocaine use (ECF No, 8-8 at 14), Petitioner's medical records do not answer that question, nor is it likely that even an expert could do more than speculate on such a question.

The bottom line is that the court found Petitioner's mental illness was only a marginal factor in mitigating his sentence because Petitioner's mental illness was already taken into account with the plea deal he received. Although his mental illness was a mitigating factor, it was outweighed by the aggravating factors. Therefore, the sentencing judge was not going to reduce the sentence even further than contemplated in the negotiated plea. Had the court looked at Petitioner's medical records at the time of sentencing rather than at the PCR proceeding, the court very clearly stated this would not have changed the sentence he imposed. (ECF No. 8-8 at 17.) Under the circumstances, Petitioner cannot meet the prejudice prong of the <u>Strickland</u> standard.

This Count also rejects Petitioner's contention that the discussion of his mental illness at sentencing pales in comparison to the information in his medical records. 

██████████████████████████████████████████████ The court, at sentencing, was aware of the chronic nature of Petitioner's mental illness and his specific diagnoses.

███████████████████████████████████████
███████████████████████████████████████████████
████ ████ ██ █ ██ ████████ ████ ████████ ██
████████ ██ ███ ████ ███ █ ████████ ██ █
████ ██ ████████ ████ ███ █ ██ ████████ ██ ██████
█████████████████████████████████████ ████████
██ ████ ████ ███ ████ ████████ ██ ████████ ██
████████ ██ ████ █████████ █ █ ██ █ ████ ███
██████████████████████████████████████
██ ████████ ████████ █ ████████ ██ ██
██ █ ████ ██ ████████ ██ ██ ████ ████████ ██
██ ██ ████████ ██████ ███ ████████ ████████ ██ █
███ █ ████ ██ ████ ████████ ██ █ ████
████████████████████████████████████████
██ █ ████████ ████████ █████ ████████ ██
████████ ████████ ██ █ ████████ Several months later, Petitioner was off his medications and using cocaine when he committed the aggravated manslaughter, which he explained to the judge at sentencing. (Answer, Ex. 2, 2T:9-25 to 10-7, ECF No. 8-2.) The information in the medical records does not render

15


unreasonable the sentencing judge's conclusion that Petitioner's mental illness, as a mitigating factor, did not outweigh the aggravating factors in sentencing. Therefore, Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim.

III. <u>CERTIFICATE OF APPEALABILITY</u>

This Court must determine whether Petitioner is entitled to a certificate of appealability in this matter. <u>See</u> Third Circuit Local Appellate Rule 22.2. The Court will issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Based on the discussion in this Opinion, Petitioner has not made a substantial showing of denial of a constitutional right, and this Court will not issue a certification of appealability.

IV. <u>CONCLUSION</u>

For the reasons discussed above, Petitioner is not entitled to habeas relief on his claim of ineffective assistance of counsel. Therefore, in the accompanying Order filed herewith, the habeas petition will be denied.

Dated: May 25, 2016

                                            s/RENÉE MARIE BUMB
                                            RENÉE MARIE BUMB
                                            United States District Judge